# Case No. 9,706.

## MONCE v. WOODWORTH.

[4 Ban. & A. 307;[1] 19 O. G. 998.]

Circuit Court, D. New Hampshire. May 8, 1879.

PATENTS—TOOL FOR CUTTING GLASS—NOVELTY—
PUBLIC USE AND SALE.

Letters patent No. 91,150, granted to Samuel G. Monce, June 8th, 1869, for a "tool for cutting glass," held void for want of novelty, the invention having been in public use and on sale more than two years prior to his application for the patent.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[This was a bill by Samuel G. Monce against Frank R. Woodworth to restrain the infringement of certain letters patent.]

Barnard & Mitchell, for complainant.

Pike & Blodgett, for defendant.

CLARK, District Judge. Two questions are presented in this case by the pleadings and the proofs, for the consideration of the court: first, the question of novelty in the complainant's invention, and, second, the question of infringement by the defendant. I have considered only the first of these, because I am satisfied, upon the evidence offered, that it is decisive of the case.

The complainant alleges in his bill that he is "a true and original inventor or discoverer of a new and useful improved tool for cutting glass," which said invention was not known or used by others before his invention or discovery thereof, and that letters patent therefor were granted to him on the 8th day of June, 1869, and that the defendant has infringed this patent.

The defendant in his answer denies that the complainant "is the original or first inventor or discoverer of the alleged invention described in said letters patent, or that the said letters are valid," and alleges that said invention, and substantial and material parts thereof, either separately or combined together as in complainant's patent, were, long prior to the grant and date of said patent, known to and used by various persons named in the answer, and amendments thereto.

The invention of the complainant "consists in the use or employment of a revolving steel roller, the periphery of which roller is bevelled on both sides, so as to form a cutting edge, and is fitted to revolve in a suitable frame, and attached to a handle for operating the same. The cutter is made from steel, and is turned smooth and round, and afterwards hardened. The sides are parallel, or nearly so, for a short distance, and then bevelled towards each other so as to meet about midway between the same, thus forming the point or cutting edge. The bevelled portion of the sides should be at an angle of about forty-five degrees to the axis of the cutter, and, consequently, will be at near right angles to each other. It is not necessary that the angles of the bevelled sides should be at exactly right angles to each other, but, near that angle, or a very little more obtuse, the cutter is found to operate to the best advantage. The cutter can be fitted to revolve upon a pin, or on solid-journals at each end. * * * The frame, near one end, is provided with bearings for the journals, which journals should be a little shorter than the thickness of the sides of the frame in order that, when the sides are placed against a straight-edge or other gauge, the end of the journal shall not come in contact with such gauge. The handle, C, can be of any desired form, and secured to the frame in any proper manner. I construct said handle like the handle ordinarily used for a diamond tool. * * * By my invention I produce a tool for cutting glass, which is equally convenient in use as an ordinary diamond, and can be sold at a large profit, for one-tenth of the usual cost of a diamond." The claim made by the complainant is as follows: "I do not claim simply a revolving cutter, but what I claim as new, and desire to secure by letters patent, is, 1. The cutter, A, constructed substantially as shown and described, and for the purposes set forth; 2. The combination of the cutter A, frame B, and handle C, substantially as and for the purposes described." The drawings attached to the complainant's specification show very clearly the invention described.

This invention, thus described and claimed by the complainant, and patented to him by letters patent, June 8th, 1869, the defendant says was not the invention of the complainant, nor was it then new, but was known and used by various persons long before—that is, the complainant was not the first inventor, as he must have been to sustain his patent. Colt v. Massachusetts Arms Co. [Case No. 3,030].

To sustain his allegation, the defendant introduces a deposition of one Charles L. Morison, who says that in the winter of 1860 and 1861 he was in the business of a photographer at Warren, New Hampshire; that he went there soon after Thanksgiving in 1860, and remained there until after the breaking out of the Rebellion in April, 1861, when he enlisted in the Fourteenth Massachusetts, and afterward in the Tenth New Hampshire Volunteers, and was mustered out June 26th, 1865; that, while he was at Warren, in the winter of 1860 and 1861, he purchased a tool for cutting glass; that he used it at Warren, and, occasionally, after he came back from the army, in 1865, until he purchased a diamond.

This tool is produced, and is found to embody, substantially and fully, the complainant's invention, and to be adapted to and used for the same purpose. It has the rotary disk with bevelled sides and cutting-edge, the pin on which the disk revolves, the frame within which it is held, and the handle with which it is operated, all combined. This purchase and use was in 1860 or 1861, eight years before the date of the patent to the complainant. The time of the purchase is fixed by the place where the purchaser then was, and his enlistment in the Union army, which he would not be likely to misremember, and the character of the tool, by its production and admission, and he says that the person of whom he bought it had more of them. This evidence, if believed, is sufficient to make it quite probable that the complainant was not the original inventor of the tool claimed by him, and that it was not new at the time of his application for a patent, but

that it had been in public use years before.

But this witness further testifies, that, while he was at Warren, in the winter of 1860 and 1861, he went twice to Haverhill, to a photographer by the name of Herbert, to get glass for his business, cutting glass there with the same cutter, and that he distinctly remembers seeing a similar tool at Mr. Herbert's gallery. This Mr. Herbert was then out of health, and his wife assisted him in his work in the gallery. Mr. Herbert is now dead, but Mrs. Herbert is still living, and her deposition has been taken in this case by the defendant. She testifies that she was married to her husband in September, 1857; that he was then a photographer at Haverhill, New Hampshire, and that he continued his business there until September, 1865; that her husband was out of health, and that she went into his gallery in the spring of 1859, and was there until the business was closed in 1865, and that she learned the business as thoroughly as she could, to help her husband. She testifies further that she was acquainted with Mr. C. L. Morison, who was at Warren in the spring of 1861; that he came to the gallery of her husband to get some glass; that they had none of the size he wanted, and he cut it for himself, with a tool which he had with him. This tool she identifies, and says her husband then had a similar one, which they used in their gallery for cutting glass. The two tools were so similar that she marked that of her husband with the letters "H. F. H.," and the other with the letter "M.," she thinks. This last is annexed to her deposition, (defendant's Exhibit M,) and has upon it some marks which may have been put there by her, but they are not very legible. The tool which was used in their gallery, marked "H. F. H.," went with the sale of their gallery, and she has not seen it since. Here, then, are two of these tools for cutting glass, both seen by Mr. Morison and by Mrs. Herbert, one produced and identified by both, and the other similar, and the time of their use fixed as early as 1861. About this there would seem to be no room for mistake, unless the witnesses are wilfully false.

Again, Morison says, that after his discharge from the army, in 1865, he again commenced the business of a photographer, at Haverhill, New Hampshire, and occasionally used the tool, which he purchased in the winter of 1860 and 1861. Morris S. Lamprey, another witness, says that he knew Morison in the army, and that, after their discharge, he visited him at Haverhill, and that while there he was in his photograph-gallery and was shown a tool for cutting glass, and saw glass cut with it. He says it went with a wheel, and was similar to defendant's Exhibit M, (the tool which Morison purchased in 1860–'61), wheel set in wood similar to this. Should think this might be it, but could not swear to it; could not swear to the length of handle. Says he stood near, watching the

process, and afterward the tool was held up near his eyes, and the cutter rolled with the finger. Now, this witness does not swear positively to the identity of the tool; but he does swear that it was similar to the one annexed to the deposition of Mrs. Herbert (Exhibit M), and as Morison swears that this is the only tool of the kind he ever had, it makes it quite certain this was the tool which he saw.

Warren S. Hill, an expert, called as a witness by defendant, says that the rotary cutter in Exhibit M is the same, in kind and form, as that described in letters patent to the plaintiff, No. 91,150. So says another expert, Edward H. Johnson. Indeed, there can be no doubt the tool described in the complainant's letters patent No. 91,150 and the one purchased by Morison in the winter of 1860 and 1861, are substantially similar in form, material, construction and use. This, I think, was conceded in the argument.

So far, there would seem to be very little, if any, doubt, that in the winter of 1860 and 1861, Charles L. Morison purchased a tool embodying the complainant's invention, constructed substantially in the same way, and used for the same purpose. It would also seem very probable that Henry F. Herbert had a similar tool, used for the same purpose, at the same time, and up to 1865. If so, the complainant's case must fail, because he was not the original inventor. Rich v. Lippincott [Case No. 11,758].

But the case does not rest solely upon this evidence. Milo Bailey, another witness called by the defendant, testifies that he is a trader at Haverhill, New Hampshire, at Haverhill Corner; that he traded at the Oliverian Village in that town from 1860 to 1867, and in 1867 removed to the Corner. He says that while trading at the Oliverian Village in 1865, latter part, or 1866, he purchased some rotary glass-cutters, either three or six of a peddler; that he has one of them now, which he annexes to his deposition, marked "O"; that he sold the others, one to Michael Carlton, Jr.; that these cutters were for cutting glass, and that he used the one retained by him for cutting glass, and that he so used it at the Oliverian Village before he moved thence, in 1867. This was two years or thereabouts before the granting of the patent to the plaintiff, in 1869. He says, he recollects the fact of having the tool before he moved from the Oliverian Village; that he kept it in the money-drawer, and used it to cut glass when he had not the size to suit a customer; that was what he bought and used it for.

Charles K. Carlton, being called as a witness, says that his father, Michael Carlton, Jr., purchased a rotary glass-cutter of Milo Bailey in the spring or summer of 1867; that he stood beside him when he purchased it; and it has since been in his father's or his own possession, and was bought to cut glass with, and has been so used, and for nothing else. He says it was purchased when Mr. Bailey first moved to Haverhill Corner, and

when the store was entirely new, newly repaired. He says this tool had upon it a label or paper, on which was printed "carbonized disk," which he removed at or about the time of the taking of his deposition. This tool is produced, marked "P," and is identical in appearance with the one marked "O," and the two are identical in construction with the one purchased and produced by • Mr. Morison. Here, then, are three tools shown, which are claimed and proved to have been purchased and used prior to the granting of the complainant's patent, and one of them several years.

To overcome this testimony of the defendant, the complainant offers the testimony of George Henry, who says he has been engaged in the manufacture of the carbonized-disk glass-cutter; that he commenced in the latter part of 1869, and continued somewhat over two or three years. At first he disposed of them to persons "coming along," "happening in," but the greater part to one man, a Mr. Brooks; and that, in all, he manufactured some sixty or seventy thousand of them. Upon being shown the tools exhibited by the defendant, marked "M," "O," "P," he says he thinks or believes he made them at his shop, and gives his reason for such belief, that the brasses are driven in in the same way, and pinned in the same way, and that the general style is altogether the same. There was no mark upon them but the paper label.

Charles Brooks, another witness, called by the complainant, states that he had bought and sold the carbonized-disk cutter made by Mr. Henry for three or four years; that the amount of his trade was, in all, seven or eight thousand dollars. Upon being shown the tools marked "M," "O," "P," he says he should say they were similar to the tools made by Mr. Henry, and that they were a part of the tools made by him, in his belief.

Neither of these two witnesses, however, swear positively that Henry made these tools. There is no certain, sure mark upon them, beyond a general similarity, and the paper label, which seems to have been on one of them. Now, if they could identify them as made by Mr. Henry, would the testimony of those two witnesses overbear the testimony of the defendant's witnesses, fixing the time and reciting the circumstances with the particularity that they do?

There are other witnesses called, to whom I have not alluded, because I have found nothing in their testimony which could have changed the probabilities of the case, or the balance of testimony. The letters patent to the plaintiff are prima facie evidence of the novelty of the invention, and the burden of proof is upon the defendant to overcome this evidence, and in this case I think he has done it.

[For another case in which this patent was held valid, see Monce v. Adams, Case No. 9,705.]